UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

   Plaintiff,

  v.                Case No. 21-CR-110

PAUL S. OSTERMAN,

   Defendant.

## ORDER DENYING MOTION TO SUPPRESS

  On May 19, 2021, a federal grand jury returned a three-count indictment charging Defendant Paul S. Osterman with the following: Count 1 – Sex Trafficking of a Child, in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(1); Count 2 – Using a Computer to Persuade and Induce/Entice a Minor to Engage in Unlawful Sexual Activity, in violation of 18 U.S.C. § 2422(b); and Count 3 – Travel with Intent to Engage in a Sexual Act with a Minor, in violation of 18 U.S.C. § 2423(b). Presently before the Court is Osterman's motion to suppress evidence obtained through a warrant authorizing police to install on his truck a GPS tracking device. Osterman requested an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to establish that the warrant was based on intentional falsehoods. Upon consideration of Osterman's motion and the government's response, the Court concluded that a hearing was warranted and conducted such a hearing on January 20, 2022. Having now considered the evidence presented and for the reasons that follow, Osterman's motion is denied.

  **GPS Devices, Search Warrants, and *Franks* Hearings**

  "[T]he Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" *United States v. Jones*, 565 U.S. 400, 404 (2012). Absent exigent circumstances or other exception recognized by the Court,

a warrant signed by a judge or magistrate must be obtained to authorize a search. *California v. Acevedo*, 500 U.S. 565, 580 (1991); *see also United States v. Brewer*, 915 F.3d 408, 413 (7th Cir. 2019) (noting "GPS vehicle monitoring generally requires a warrant . . . ."). Law enforcement obtained such a warrant here, but Osterman contends the warrant is invalid because police intentionally or recklessly used false information to obtain it.

In *Franks v. Delaware*, the Supreme Court held that, where a defendant makes a substantial preliminary showing that a false statement was knowingly and intentionally, or with reckless disregard for the truth, included by the affiant in a search warrant affidavit and the statement was necessary to finding probable cause, the Fourth Amendment requires that a hearing, what has become known as a *Franks* hearing, be held at the defendant's request. If at such a hearing the defendant succeeds in proving that the warrant was based on such information, the warrant is deemed invalid and any evidence obtained thereby is suppressed. 438 U.S. at 155–56; *United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013).

A *Franks* hearing is not held on the defendant's mere request. The defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56. As the court explained in *McMurtrey*, "It is relatively difficult for a defendant to make the 'substantial preliminary showing' required under *Franks*. Allegations of negligent or innocent mistakes do not entitle a defendant to a hearing, nor do conclusory allegations of deliberately or recklessly false information. The defendant must identify specific portions of the warrant affidavit as intentional or reckless misrepresentations, and the claim of falsity should be substantiated by the sworn statements of witnesses." 704 F.3d at 509 (citing *Franks*, 438 U.S. at 171). "To obtain a hearing, the defendant must also show that if the deliberately or recklessly false statements were

2

omitted, or if the deliberately or recklessly misleading omissions included, probable cause would have been absent." *Id.*

**The Search Warrant Affidavit**

The affidavit submitted in support of the warrant application in this case is signed by Detective Sergeant Chad Wanta of the Oneida County Sheriff's Office. At the time of the application for the warrant, Sergeant Wanta was affiliated with the Internet Crimes Against Children (ICAC) Task Force, which focuses on investigating technology-facilitated child sexual exploitation and internet crimes against children, including trafficking of children. Sergeant Wanta had been a law enforcement officer for eighteen years and had received training in the investigation of internet crimes against children. He worked cooperatively with agents from the Wisconsin Department of Justice investigating cases within Oneida County. Wanta Aff., Dkt. No. 22-1, ¶¶ 1–3.

In his affidavit, Sergeant Wanta recounts a series of eight CyberTipLine reports from the National Center for Missing and Exploited Children (NCMEC) that had been received by the Wisconsin Department of Justice, the Oneida County Sheriff's Office, and the Federal Bureau of Investigation. Ex. 1, Wanta Aff. at ¶ 6. A CyberTipLine Report is a notification that internet providers are statutorily required to submit to NCMEC regarding suspected online crimes against children. NCMEC then forwards those cyber tips to the appropriate law enforcement agency for investigation. *See* 18 U.S.C. § 2258A.

Sergeant Wanta stated in his affidavit that he had received several CyberTipLine reports that described incriminating messages beginning in January 2018 and continuing to December 2019. The messages all seemed related because of the characteristics they shared. Wanta Aff. at ¶ 6. The affidavit describes eight separate CyberTipLine reports. Each was reported by the electronic service provider MeetMe.com and sought a sexual encounter with a female child. All

3

had screen names using a name starting with the letter J. One used the name "Jared," and the rest used some form of the name "Jacob" and/or "Jones." The contents of the message and verbiage used to convey the offer to pay money to meet with minor females for sexually explicit purposes was also strikingly similar. In each instance, the suspect offered to pay if the recipient could find him "a much younger girl." Without stating amounts, the suspect continued to promise "serious cash if you could get me a much younger girl" or "I'll pay you lots," frequently using dollar signs, "$$$," to represent money. All but two of the messages were sent using public Wi-Fi locations. All but one of the CyberTipLine reports stated that the Wi-Fi locations used by the sender were associated with businesses located in Rhinelander, a small city (pop. 7,500) in northern Wisconsin. *Id.* ¶¶ 6–10, 12–15. Two of the reports described in the affidavit stated that the IP address used by the sender was determined to be from the public Wi-Fi provided by the McDonald's fast-food restaurant at 25 S. Stevens Street in Rhinelander, and three stated the IP addresses used by the sender were determined to be from the public Wi-Fi of Modes, Machines & More LLC, a laundromat located at 2100 Lincoln Street, Rhinelander. *Id.* ¶¶ 7, 9, 13–15. Two of the reports identified Northwoods Communications Technologies, located at 2151 N. Chippewa Drive, Rhinelander, Wisconsin, as the source of the IP address for the messages, and one of the reports determined that the IP address used by the suspect was from the public Wi-Fi location at the Holiday Inn Express at 200 S. Mannheim Road, Hillside, Illinois. *Id.* ¶¶ 8, 10, 12.

These facts, which Osterman does not challenge, are sufficient to warrant the inference that the messages described in the eight CyberTipLine reports likely shared the same source or originated from the same individual who lived and/or worked in Rhinelander. The inference that Osterman was likely that source arose from several other facts Sergeant Wanta included in his affidavit. As noted, two of the CyberTipLine reports Wanta received identified the Rhinelander business Northwoods Communications Technologies as the source of the IP address for the

4

messages. Those messages included one sent by Thor Jones on May 28, 2018, and another sent by Jake Jones on August 26, 2018. *Id.* ¶¶ 8, 10. Osterman, a resident of Rhinelander, was the contact person for Northwoods Communications. *Id.* ¶ 8. Sergeant Wanta and Special Agent Theodore Indermuehle of the Wisconsin Division of Criminal Investigation ICAC Task Force interviewed Osterman about the messages the CyberTipLine reports identified as issued through his company. By the time of the interview, the name of Northwoods Communications had been changed to Northwoods Connect—High Speed Internet, which was an internet service provider, and Osterman was identified as an owner. Osterman told Sergeant Wanta and Special Agent Indermuehle that the IP address used on the dates and times in question could have been used by any of Northwoods Connect's approximately 400 customers but there was no way to track one specific customer to the IP address. *Id.* ¶ 11.

In addition, one of the CyberTipLine reports identified a messaging conversation that began on July 4, 2019, between a person with the MeetMe username Brad Jones and a person the government refers to as JV-1. According to Sergeant Wanta's affidavit, Jones initially believed JV-1 to be a 19-year-old female living in Chicago. Jones told JV-1 "I'll give you $$$ if you can get me a much younger girl." *Id.* ¶ 12. JV-1 then told Jones she was only 13. Jones replied, "cool. id love to fuck a 10–12 girl. know any? ill pay you." *Id.* JV-1 asked Jones where he lived, and Jones responded that he lived in Milwaukee but could drive to Chicago. JV-1 told Jones she was really 12 years old and sent him a picture. Jones then agreed to a sexual encounter with JV-1 and said he would drive down to Chicago that night and be there by midnight. At approximately 11:42 p.m., Jones messaged that he was close, and JV-1 gave him an address. *Id.* According to Sergeant Wanta's affidavit, the IP address used by Jones during the messaging was determined to be a public Wi-Fi location at Holiday Inn Express & Suites located at 200 S. Mannheim Road, Hillside,

5

Illinois. Records from the Holiday Inn obtained by the Wisconsin Department of Justice revealed that Osterman rented a room at the hotel on July 5, 2019. *Id.*

Finally, Sergeant Wanta stated in his affidavit that, on February 21, 2020, the Rhinelander Police Department had received a call for service regarding a suspicious male parked in a vehicle for several hours at 2120 Lincoln Street. Rhinelander Police Officer Benjamin Curtes responded and made contact with a male sitting in a black 2019 Ram 1500 Classic Pickup Truck. The male was identified as Osterman. According to Officer Curtes, Osterman had two electronic tablet devices and a cellular phone operating at the same time. Osterman told Officer Curtes that he was the owner of Northwoods Connect and was testing the internet speed of Northwoods Connect competitors. Sergeant Wanta noted in his affidavit that the location where Osterman was parked was within the range that would allow access to the public Wi-Fi connection of Modes, Machines & More LLC, the public Wi-Fi location identified for three of the eight CyberTipLine reports Wanta was investigating. *Id.* ¶ 16.

Based on this information, Sergeant Wanta sought and obtained a warrant authorizing him to surreptitiously place a GPS tracking device on Osterman's pickup truck on April 6, 2020. Police then monitored the data retrieved from the device through the summer and fall of 2020. They determined that Osterman's truck was parked at the McDonald's and laundromat at the locations identified in the CyberTipLine reports for multiple hours on multiple days. The GPS data also showed that the truck was parked at other public Wi-Fi locations in northern Wisconsin during this time. Govt.'s Response, Dkt. No. 22 at 6.

Osterman contends in this case that two material false statements appear in the warrant used to authorize the installation of the GPS tracking device on his vehicle. Osterman first contends that Sergeant Wanta's statement that "the IP address used by Jones during the messaging was determined to be a public Wi-Fi location at Holiday Inn Express & Suites, 200 S. Mannheim

6

Road, Hillside, IL 60162." Wanta Aff. at ¶ 12. Osterman contends that this statement is false. Instead, he contends, the investigators identified two IP addresses used by "Brad Jones" on July 4, 2019, while messaging JV-1 and that neither of those IP addresses were associated with the Hillside Holiday Inn. Def.'s Mot. to Suppress, Dkt. No. 19, at ¶ 10. The second statement Osterman challenges concerns Sergeant Wanta's description of Rhinelander Police Officer Curtes' interaction with Osterman on February 21, 2020. Wanta Aff. at ¶ 16. Sergeant Wanta stated in his affidavit that Osterman was observed in his truck and that he "had two electronic tablet devices and a cellular phone operating at the same time." *Id.* Osterman contends that the statement that Osterman was using three electronic devices simultaneously is also false. Instead, Osterman claims that Officer Curtes' report states that he saw Osterman using his cellphone and "there were two tablets stacked on top of each other on the center console." Mot. to Suppress at ¶ 14.

**Findings of Fact and Conclusions of Law**

At the outset, I find Sergeant Wanta to be a credible and candid witness. The statement in his affidavit that the IP address used by Jones "*during the messaging*" was determined to be a public Wi-Fi location at the Hillside Holiday Inn was false if "during the messaging" was intended to refer to the electronic conversation Jones had with JV-1. Sergeant Wanta testified that that is what he intended to say in his affidavit and conceded that he was mistaken. The CyberTipLine report he viewed actually said that Jones used the Hillside Holiday Inn public Wi-Fi on July 5, 2019, about 12 hours after Jones' last message with JV-1. Although not included in his affidavit, Sergeant Wanta testified that he knew at the time he applied for the warrant that the Brad Jones email account had been created using the public Wi-Fi at the Goodwill store in Antigo, Wisconsin on July 3, 2019. Antigo is also in northern Wisconsin, about 45 miles south of Rhinelander. As the affidavit recounts, the CyberTipLine report stated that Jones' messaging with JV-1 occurred on July 4, 2019. Jones initially believed JV-1 to be a 19-year-old female living in Chicago. Jones

7

told JV-1 he would "give you $$$ if you can get me a much younger girl." Wanta Aff. at ¶ 12. JV-1 then told Jones she was actually 13 years old, and when Jones indicated he wanted someone still younger, JV-1 said she was 12. The conversation continued with Jones eventually agreeing to travel from Milwaukee where he claimed to live to Chicago that night to have sexual intercourse with JV-1. *Id.*

Sergeant Wanta testified that the electronic CyberTipLine report concerning this incident, along with the attachments showing the internet provider's response to subpoenas, indicated that Jones had used a public Wi-Fi in Antigo and one at a McDonald's in Gurnee, Illinois, just north of Chicago, in his messaging with JV-1. He also used a public Wi-Fi for another McDonald's in Chicago in the early morning hours of July 5, 2019, telling JV-1 to meet him outside at 2:30 a.m. Sergeant Wanta testified that he failed to include the other public Wi-Fi locations in his affidavit because of his focus on the Holiday Inn and the guest list that included Osterman's name and address.

Sergeant Wanta testified that after receiving the CyberTipLine report recounting these messages, agents at the Wisconsin Department of Justice realized that the substance and form of the messages was similar to the Rhinelander messages that he was investigating and issued a subpoena to the Hillside Holiday Inn, approximately 17 miles west of Chicago, for the list of guests who were staying at the hotel on July 5, 2019. Sergeant Wanta recognized Osterman's name on the list as the person whose name had surfaced in connection with Northwoods Communications, which had issued the IP address associated with two of the CyberTipLine reports. As he was preparing his affidavit, he inadvertently omitted the other Wi-Fi locations that were identified in the report. Sergeant Wanta testified that he viewed the other Wi-Fi locations as possibly relevant to the case involving JV-1 but not to the Wisconsin cases he was investigating.

Based on the evidence presented and my review of the warrant affidavit, I find that Sergeant Wanta did not knowingly, intentionally, or with reckless disregard for the truth, include a false statement in his search warrant affidavit. While it is true that Jones was not using the Hillside Holiday Inn Wi-Fi while messaging with JV-1, he did use it during the general time period in which Jones had apparently traveled to Chicago in order to have a sexual encounter with a child he believed to be 12 or 13 years old. The fact that he connected to internet using the public Wi-Fi provided by different businesses while specifically messaging JV-1 was not material to the probable cause determination. There was no way to identify who Jones might be from the public Wi-Fi available at the Goodwill Store in Antigo or the McDonald's restaurants in Gurnee or Chicago. People do not generally provide their names in order to use the free Wi-Fi connection that is offered to customers at restaurants or other businesses. The failure to identify the other public Wi-Fi locations from which Jones sent messages to JV-1 thus did not weaken the inference that Osterman was likely the source of the messages. In fact, had the additional information been provided, it would have strengthened the inference tying Osterman to the messages since it would have more clearly linked the messages to JV-1 to the person from northern Wisconsin who Sergeant Wanta believed was trying to arrange sexual encounters with young girls. It would have shown that Jones had traveled from Antigo south to Chicago in order to have a sexual encounter with a child.

Hotels, on the other hand, commonly offer free Wi-Fi to registered guests. By checking the hotel registry, the investigators were able to obtain a list of individuals, one of whom was likely the source of the Jones messaging. That Jones was sending messages through the Hillside Holiday Inn Wi-Fi system using the same email account he used to set up his sexual encounter with JV-1 only hours earlier and on the same day that Osterman was a registered guest at the same hotel was the key fact that, together with the other information contained in Sergeant Wanta's affidavit, gave

9

rise to the reasonable inference that Osterman was the person responsible for the messages law enforcement was investigating. For these reasons, Sergeant Wanta's identification of the Hillside Holiday Inn as the location from which Jones messaged JV-1 and his failure to identify the locations of the public Wi-Fi Jones actually used for the specific messages he sent to JV-1 was not a materially false statement either intentionally or recklessly made in order to obtain a warrant.

Osterman's argument is even weaker with respect to the second "false statement" he alleges concerning the report of Officer Curtes. The affidavit stated Officer Curtes had reported that Osterman was operating his phone and two electronic tablet devices when Officer Curtes encountered him in response to a call that a suspicious person had been parked outside a business for hours. Osterman had been parked near the laundromat whose public Wi-Fi had been identified as the source for three of the CyberTipLine reports Sergeant Wanta identified in his affidavit. Osterman asserted in his motion that Sergeant Wanta's statement that Officer Curtes reported Osterman was using three electronic devices simultaneously is false and that Officer Curtes actually reported that Osterman was using his phone and the tablets were stacked on top of each other on the center console. In fact, Officer Curtes' report, which was received in evidence at the hearing, notes that Osterman told Officer Curtes that he was "checking the speed of the connection while using his devices to check email and other applications." Ex. 3. Given the specific language of the report, I find Sergeant Wanta's summary of Officer Curtes' observations in his affidavit was true and accurate.

In sum, Osterman has failed to demonstrate that a false statement was knowingly and intentionally, or with reckless disregard for the truth, included by Sergeant Wanta in the affidavit he submitted in order to obtain the warrant authorizing the placement of a GPS tracking device on Osterman's truck. In addition, neither of the allegedly false statements he identifies were material to the probable cause determination made by the judge who issued the warrant. Osterman's motion

to suppress is therefore denied. The Clerk is directed to place this matter on the Court's calendar for a telephone conference to discuss further proceedings.

**SO ORDERED** at Green Bay, Wisconsin this 26th day of January, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge